Petitioner may proceed. May it please the Court. My name is Dominic Edward Capecci of the Office of Kaiser and Capecci, representing Petitioner Mr. Kevin Mbugua in this matter. Before I begin, I'd just like to request two minutes of rebuttal time, if I may. You may. But you'll have to help keep track of your own time, because that's going to say the whole time that's left. Yes, Your Honor. Respondent, excuse me, Petitioner begins by noting that the court has jurisdiction, which I believe is stipulated by the respondent at page one of his brief. And also under INA section 242A1, the court will review the decision of the immigration judge according to Koresh and Alialua. And that's also stipulated by respondent's brief at page 14 and also by petitioner on both of those counts. The true issue here is what was the basis for the adverse credibility finding by the immigration judge within the record of proceedings? The record of proceedings excluded Exhibit 11, which was the, quote, assessment to refer, unquote, which was authored by the asylum office. And which the immigration judge properly determined was not appropriate to consider because the asylum officer was not there to be cross-examined to determine the reliability of the Exhibit 11, and therefore, it could not go into the record of proceedings. And that's at page 114 of his brief. But didn't the client submit an affidavit in connection with the or a declaration in connection with the interview of the asylum officer? He did. And isn't it the inconsistencies between that affidavit and what he later said under oath that led to the credibility findings? No, Your Honor. The immigration judge did not rely on Exhibit 2 whatsoever in his determination. That respondent was incredible. Instead, he said, quote, and I should paraphrase, these are not direct quotes. There was a conflicting testimony from respondent, conflicting, that is, at least as far as the testimony in the court versus the statements provided to the asylum officer. And that's at page 51 and 52. But when he talks about statements, the court goes on to say there's a great deal of discrepancy and inconsistency in the record, excuse me, between the two versions. The one told, and I say the word told because it was not in writing, told to the asylum officer. That's at Exhibit 11, and we can't determine what was told because it's not in the record of proceedings, it's been excluded, and the objection was upheld, versus what was told today in court. So if one looks at page 53, 51, and 52, and primarily 53, the court is relying in what was told to the asylum office and also using Exhibit 3, which is the statement that was told, can mean told in written form or told orally. Well, it appears that he continually refers to telling as in verbal. And that is also reflected on one of the inconsistencies regarding the rest, which  is that it was conflicting testimony from the Respondent, conflicting that is at least insofar as the testimony in court today versus the statements provided to the asylum officer at the asylum interview. Now, statements provided certainly can refer to declarations. It could, Your Honor, but elsewhere at page 52, the immigration judge recorded that it refers to according to the asylum officer interview, according to the asylum officer interview at page 52, well, that's Exhibit 11. That's what was told at the interview verbally to the asylum officer. So I don't believe that the immigration judge is mentioning the written statements, and I don't believe that the immigration judge relied on those because even those were at Exhibit 11, which, excuse me, Your Honor, which, again, is duplicated – basically, Exhibit 2 and Exhibit 11, Exhibit 2 is not reliable because, number one, he – the Petitioner said he had already, you know, lied to save his life at the oral testimony before the immigration – yeah, before the immigration judge. And Exhibit 11 shows that that – the oral statements at the asylum office were inconsistent with the written statements at the asylum office. So he's already admitting those inconsistencies. So the immigration judge has to find something to refer to to test the testimony before him at the individual hearing. What about the statement on page 53 that the Respondent went on to state that he had indeed lied to the asylum officer during his asylum interview? Yes. That – that was provided at Exhibit 3, which the immigration judge refers to as the pleadings, where at Exhibit 3, the new true declaration admits the lie. And in that says, the reason why I did it is because I was intimidated, I wasn't well-prepared, but most importantly, I did not want to go back. I wanted to save my life. So it's not a question of whether there is an inconsistency or whether he lied. The question is why he lied and does – how much does that matter? Yes. And the immigration judge is struggling with that. He, again, has to compare what is being told to me today versus what do I compare that to. Well, it's not a question of what he compared it to. He admitted he lied. Yes. And the question is – and he explained why. And the question is, you know, not whether there are lies or inconsistencies, but whether there's a justification for it. Yes, Your Honor. That's absolutely true. And the immigration judge indicates that he found credible the reason, the very basis for the lie, which is that he wanted to save himself. And that's at page 59, where he says, I – He said he was desperate and felt the need to embellish his story. But this information was only contained in Exhibit 3. And the administrative judge referred to Mr. Ng, your client's pleadings. Yes. Since it was only found in Exhibit 3, doesn't that show that the administrative judge did consider Exhibit 3? You claim that he failed to consider Exhibits 3 through 8. Your Honor, that's absolutely true. But he uses Exhibit 3 as a jumping-off point. And that's where he says at page 59 that the mere admission to the lie is not enough. I find that exhibit at Exhibit 3. But the basis for the lie, what is that? And so he incorrectly says that that Respondent conflicts with his own statements regarding what happened at the asylum officer interview versus what he is saying at the immigration court, because this – the immigration judge is saying that, oh, at the asylum office, you're saying it's because there's a translation problem and so forth. Now you're telling me it's because you want to save yourself. But if one looks at the record at 103, 132, and 248, the Respondent has always said, at the time – as he recounts what he said at the asylum office and during the asylum officer interview and during – and in writing in Exhibit 3, I felt safe here. I didn't want to go back home and be killed, unquote. Late – also at court, I'm speaking from the heart. I was trying to protect myself. In Exhibit 3, I have to save my life. So that – that – your argument is that shows that he had a sincere fear of persecution. My argument is that if the – if the immigration judge is simply saying, I need a basis to see if this person is credible or not, and I look at Exhibit 3 and he admits he lies, so how do I find out what is true – excuse me – how do I find out if there's been any – how do I know if – if I believe him? Well, I'm going to rely on what he says about the asylum officer interview, but that's inconsistent with what he says today. So I can't – the ultimate basis of my decision is what is the basis for the lie? We know you've lied. What's the basis for it? And at the asylum office, you're saying one thing. Now you're saying the other thing, but the immigration judge is incorrect because he said the same thing the whole time. Kagan. You have about a minute left if you want to reserve it. Thank you, Your Honor. Thank you, Judge Schroeder. May it please the Court, I'm Henry Ross with the Department of Justice. The United States admits that there is substantial evidence supporting the decisions of the court below and the appeals board in denying asylum, withholding of removal, and convention against torture relief to the petitioner on the grounds that the petitioner lacked overall credibility. There was no political connection to the events that he described, and that the country conditions had changed in Kenya. It changed his status there. Considering the evidence, we believe there's no reason – that no reasonable fact-finder would be compelled to decide this case. Otherwise, therefore, the decision should be affirmed. The evidence shows that the immigration judge correctly decided the petitioner lacked credibility, including the testimony. The petitioner in this case, throughout the process, gave four different statements. The first two, the original declaration and the asylum interview, were consistent with each other. Then the last two, two years later, the supplemental declaration and the testimony in court were consistent largely with each other, but inconsistent on a very important point, but inconsistent with the first two statements. The immigration judge analyzed this evidence. When he looked at the immigration interview that was used to impeach, he had all this before him. Most of these statements were in evidence except for the asylum interview, which was marked, but not admitted, but was used for impeachment. He compared the asylum interview with the trial testimony, analyzed the evidence in detail, and found that there were substantial inconsistencies that went to the heart of the claims that the petitioner had made. These regarded the number of arrests, the dates of the arrests. The judge said he compared the asylum interview. Are you talking about the interview that was barred from evidence? This was barred from evidence, Your Honor, but he was used to impeach the petitioner, and that is what he reviewed his notes about this impeachment that took place. This was part of Exhibit 11. But it sounded to me like you were saying he compared that substantively to the testimony at the hearing. No, Your Honor, he didn't. He didn't do that. We don't submit that he didn't. He had it before him because it was used to impeach, and in the regard that it was used to impeach, in that regard, he used it to compare it with the testimony. He was cross-examined about this prior statement, this prior interview, and the government counsel went through it, and he said again and again, yes, I said that, but this is the way it was, and it was inconsistent with what he had testified to at the trial on his direct testimony. But anyway, he went through the dates of the arrest, the length of the arrest, the fact that he was in student groups that he said he was in, in his prior statements that he didn't mention when he testified at trial, or in the supplemental declaration. He also admitted testifying at trial, or at the hearing about the shooting incident in the van where he said his brother was wounded with a bullet and that a certain student was killed. He didn't mention that in his hearing testimony that he had mentioned in previous statements, the ones that took place two years before. But the thing that really sumped the Petitioner was the inconsistency in the supplemental declaration where he said that he had been untruthful to the asylum officer, and then he testified about another reason. He had showed inconsistencies between his last two statements for the reason that he said he lied to the asylum officer two years before. The immigration judge went into great detail about this, and this is the thing that's really the main factor that seemed to turn the case. He had lied about the reason that he had lied. He said at the trial that he was confused, he was intimidated, he couldn't communicate well, he said things that came to the top of his head when he had talked to the asylum interview officer. However, in his supplemental declaration, he said, I had to save my life. The immigration judge considered that, and when he looked at it, he believed that really nothing that the Petitioner said could be believed, because he lied about the fact that he lied. He couldn't keep his story straight in any regard. Now, the Petitioner argues that the supplemental declaration, if it had been considered, would have turned the whole case around, would have made a big difference. But it's presumed that this was exhibit two, or exhibit three. It's presumed that the immigration judge did look at that exhibit. He only has to mention it when he rejects it specifically under the case law in which the Petitioner would have had it before him, and he would have considered it. He examined the testimony. Since your time is limited, I'm going to tell you what I want to ask about the Katt claim. Now, in your briefs, you talked about Camalthus, that a negative credibility determination in the asylum context should not wash over the torture claim. And I notice that you cited FARA in your brief, but you didn't discuss it. Now, as I read FARA, it seems to present your best argument in support that where there is no evidence apart from the discredited testimony of the Petitioner and where the BIA did not refuse to consider the country reports as they did in Camalthus, a Katt claim must fail. Is this the argument that you intended to make? That was the argument that I was going to bring today if I had the time to get through all of this. But FARA does seem to control this case because if he's found to lack credibility for them, based on the same statements in the same hearing, then he doesn't have credibility for any of the claims. So that washes over the two claims here. We believe that case controls that particular situation. All right. Thank you. What did the immigration judge say about the torture claim? The immigration judge didn't analyze that in detail in the decision, oral decision, Your Honor, but he had found that the Petitioner lacked credibility and the fact that he lacked credibility if he couldn't be believed about the asylum claim, if he that actually would have shown torture, then really couldn't be believed about anything. And there was no need to actually go into every specific claim. Once he found that he lacked credibility, that went to the heart of everything that he had presented. All his statements came from him, of course. His testimony came from him. There's really nothing left over to base any of these claims on if he lacks credibility. Well, in fact, he didn't say a word about the torture claim in his decision until the order in which he just said it's denied. That's true. Again, under the Farrow case, if he's lacking credibility based on these statements, I mean, all the claims should fail. And that's pretty apparent, that he did find that he lacked overall credibility. You don't think he has to say a word about the torture claim in his decision and that's good enough? Under the Farrow case, I don't believe that he does, Your Honor. I think that when he finds that he lacks credibility, then that claim fails. He did in the final order. The order said it was denied. He did in the final order, and I could flip through, but I believe possibly on the last page. No, if he hadn't denied it, there'd be no question he had to do it. But all he said was it was denied. He gave no explanation, no reason. He didn't say anything about it except that it's denied. And your argument is that's enough. We believe that's enough, Your Honor, because if he had found him to lack credibility about his torture testimony or anything else, then he couldn't establish the claim. If he couldn't show torture, he could not. Well, we don't know what the country report says, what he thought of it. And I guess we know what it says. We can read it. But he didn't give as a reason anything relating to the country report. Okay, well, the issue is very clear. Is it necessary to say why you're denying the torture claim, or is it not? Can we just rely on the record? I believe you can rely on the record. He could have, as far as that goes, he could say that I find him incredible for his asylum claim, I find him incredible for his withholding of removal claim, and I find him incredible for his convention against torture claim. But one finding really goes to all of them. None of the claims could be established if the petitioner lacked credibility. None of them would be justifiable. And isn't that what Ferris said? It said the Cat claim was denied because it was based on the same statements that the BIA determined to be not credible. And no one pointed to any other evidence that he could claim that BIA should have considered. That's correct, Your Honor. We believe that case clearly controls. I see my time's about up. I would like to briefly mention that the ineffective assistance of counsel argument or issue wasn't brought before the appeals board. And although we didn't mention in the brief the argument that the, what Judge Reinhart just mentioned, the failure to distinguish the Cat standards from the asylum standards, and the argument that all exhibits weren't considered, neither of these issues was raised before the board as well. You've used your time. Thank you. Do you wish to add anything, briefly? Your Honors, I just have a couple of brief points. First of all, in reference to country conditions and so forth. I can't hear you, counsel. I'm sorry, Your Honor. The court, the immigration judge, first of all, in reference to Kamalthus. That petition was found to be incredible. And nonetheless, the Ninth Circuit stated that the four mandatory factors found at 216, excuse me, 28.16c still had to be addressed. As the underlying rationale of the immigration judge to deny said claim, because it was intellectually distinct from the other forms of relief from removal. Even if it was based on credibility to deny the Cat claim, the sole basis for that finding of incredibility was the fact that the immigration judge perceived his underlying rationale for the lie at the asylum office to be different than the rationale that he was giving at the immigration hearing before the immigration judge. But that's incorrect if one looks at 104.132 and 248, the whole time he says it's because he wanted to save his life. So that can't be the basis on the record to find an incredible, at the time of the individual hearing before the immigration judge. Thank you. The- The commissioner appreciates the invitation to come argue. Thank you. Thank you. The case just argued is submitted for decision, and we'll hear the next case, which is Catalano v. Astruz.
judges: Schroeder, Nelson, Reinhardt